UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| C. PEPPER LOGISTICS, LLC, et al., | ) |
| | ) |
| Plaintiffs, | ) |
| | ) Case No. 4:20-cv-01444 |
| v. | ) |
| | ) |
| LANTER DELIVERY SYSTEMS, LLC, et al., | ) |
| | ) |
| Defendants. | ) |

**REPLY IN SUPPORT OF MOTION TO DISMISS
ALL CLAIMS AGAINST WHITE LINE SYSTEMS, LLC AND
DARIEN BROKERAGE, LLC IN PLAINTIFFS' FIRST AMENDED COMPLAINT**

**Introduction**

Plaintiffs' opposition brief ("Response") fails to explain how White Line Systems, LLC's and Darien Brokerage, LLC's (collectively "White Line") role as the next business partner after a failed relationship renders either entity liable under any theory. Rather, the Response further illustrates Plaintiffs' inability to point to any specific actionable misconduct perpetrated by White Line or Darien. Plaintiffs continue to lump all Defendants together, as if actions by one Defendant are the actions of every entity that one Defendant chooses to do business with. Because Plaintiffs fail to refute the arguments and case law White Line lays out in their opening brief showing there is no plausible claim against White Line or Darien, the claims against them should be dismissed.

**Argument**

**I.      Plaintiffs' conversion claims fail against White Line (Count I).**

Plaintiffs make no factual allegations that White Line or Darien took possession of Plaintiffs' equipment. Instead, they merely allege that White Line "directed" drivers to drive Plaintiffs' equipment (power units and trailers). *See* Doc. # 72, p. 4. Yet, even in their Response, Plaintiffs fail to articulate how or when these unnamed "drivers" received direction – and who specifically provided any such direction. These conclusory allegations are insufficient to state a claim. *See Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) ("the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions…[n]or does a complaint suffice if it tenders naked assertions devoid of further factual enhancement.").

Moreover, as pointed out in the opening briefing, Plaintiffs lump all Defendants together and allege, "White Line, Darien Brokerage, Lanter Delivery, and Ryder…wrongfully took exclusive possession" of their equipment. *See* Doc. # 42, ¶ 185. Plaintiffs provide no argument to refute the premise that pleading in this fashion fails to satisfy the requirements of Rule 8. *See Rosemann v. Sigillito*, 2011 WL 13248373, *16 (E.D. Mo.) ("When it is unclear from a complaint which allegations are made

1

against which defendants, the complaint does not satisfy Rule 8.").

In regards to Plaintiffs' allegations that White Line converted their trade secret information, Plaintiffs' Response fails to articulate why the Missouri Uniform Trade Secrets Act ("MUTSA") does not preempt this portion of their claim. *See* Mo. Rev. Stat. §417.463 (preempting all torts providing civil remedies for misappropriation of a trade secret).

Nor does Plaintiff's Response refute the proposition that copying is not converting under Missouri law. Plaintiffs erroneously rely on *Monarch Fire Prot. Dist. of St. Louis Cty., Missouri v. Freedom Consulting & Auditing Servs., Inc.*, 678 F. Supp. 2d 927, 944 (E.D. Mo. 2009) and *Green Valley Seed, Inc. v. Plenge*, 72 S.W.3d 601, 603 (Mo.Ct.App.2002) to argue that copying does constitute converting. In *Monarch Fire*, the court held that copying **is not** converting. 678 F. Supp. 2d at 945 ("Conversion requires an interference with the owner's property rights, and it is undisputed here that Plaintiff has not been deprived of the possession or use of any the allegedly converted PHI."). Further, *Green Valley Seed, Inc.* is wholly inapplicable, as it states the rule for conversion cases where the defendant's possession was initially lawful (not the case here, according to Plaintiffs). 72 S.W.3d at 603 (plaintiff alleging conversion where defendant's possession was initially lawful must prove that a demand for return of property was made as an element of the claim). Indeed, "Missouri courts have not extended the doctrine of conversion to purely intangible rights." *J & J Sports Products, Inc. v. Garcia*, 2014 WL 2644194, at *4 (E.D. Mo. June 13, 2014).

Therefore, Plaintiffs' conversion claim should be dismissed because: (1) there are no specific allegations alleging how White Line or Darien converted Plaintiffs' equipment; (2) conversion of a trade secret would be preempted by MUTSA; and (3) copying is not converting.

II.     **Plaintiffs' unjust enrichment claims fail against White Line (Count II).**

Plaintiffs' Response incorrectly characterizes White Line's argument. White Line does not argue, as Plaintiffs contend, that Plaintiffs' unjust enrichment claims fail because "no benefit is alleged

to have been retained or appreciated." Doc. # 72, p. 7. Instead, White Line argues that Plaintiffs' unjust enrichment claims fail because Plaintiffs fail to allege that White Line or Darien received any benefit **conferred by Plaintiffs**. Absent a quasi-contractual relationship in which Plaintiffs conferred a benefit, there is no conversion claim. *See Wiles v. Sw. Bell Tel. Co.*, 2010 WL 1463025, *4 (E.D. Mo.) (dismissing an unjust enrichment claim because there was no contract-like relationship). Plaintiffs do not (and cannot) refute this proposition in their Response.

Further, the portion of Plaintiffs' unjust enrichment claim predicated on the misappropriation of trade secrets information is preempted by MUTSA. *See* Mo. Rev. Stat. §417.463 (preempting all torts and other laws providing civil remedies for misappropriation of a trade secret). Plaintiffs provide no argument or authority to the contrary in their Response.

For these reasons, Plaintiffs unjust enrichment claims fail.

**III.   Plaintiffs' tortious interference claims fail against White Line (Count III).**

Plaintiffs say nothing to refute the proposition that their tortious interference claim is based on misappropriation of trade secrets – Doc. # 42, ¶¶203, 213 – and is thus preempted by MUTSA. *See* Mo. Rev. Stat. §417.463 (preempting all torts and other laws providing civil remedies for misappropriation of a trade secret); *Reliant Care Management, Co., Inc. v. Health Systems, Inc.*, 2011 WL 4369371 (E.D. Mo. Sept. 19, 2011) (dismissing tort claims based on "facts related to the misappropriation of trade secrets claim" as preempted).

Plaintiffs attempt to assert that the same set of facts underlying their trade secrets claims also constitutes tortious interference (and the other tort claims contained in the FAC). This manner of pleading is improper, resulting in the preemption of such tort claims. *See Secure Energy, Inc. v. Coal Synthetics, LLC*, 2010 WL 1691454, at *2 (E.D. Mo. April 27, 2010) ("claims that are based upon the same set of operative facts as a MUTSA claim will be preempted.").

Even if this Court does not find that Plaintiffs' tortious interference claim is preempted (it

3

should), Plaintiffs failed to plead the "absence of justification" element of their claim. Plaintiffs cannot prove "absence of justification" where White Line had legitimate economic interests in the business expectancy (Plaintiffs do not deny White Line are competitors) unless they prove White Line, specifically, employed improper means. *See Central Trust and Inv. Co. v. Signalpoint Asset Mgmt., LLC*, 422 S.W.3d 312, 324 (Mo. 2014) (en banc). As discussed in the opening briefing, Plaintiffs lump all Defendants together and plead, "Defendants have improperly used the proprietary and/or confidential information of [Plaintiffs]…to induce drivers…to breach their fiduciary duties and duties of loyalty." Doc. # 42, ¶ 213. Plaintiffs fail to specify what information White Line/Darien improperly used to induce drivers to breach their duties, or how White Line/Darien used information to induce drivers to breach their duties.

Further, Plaintiffs argue they have sufficiently plead facts showing White Line or Darien knew of some business expectancy. However, they merely allege White Line gained "crucial insider knowledge" – without alleging what specific information White Line or Darien came to know. *See* Doc. # 42, ¶ 76. Again, such vague and nonspecific allegations are insufficient to satisfy Rule 8. *See Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) (the complaint must have enough factual content for the court to draw "the reasonable inference that the defendant is liable for the misconduct alleged").

Because Plaintiffs' tortious interference claim is based on the same facts as their trade secrets claims, it is preempted and should be dismissed. Alternatively, Plaintiffs tortious interference claim should be dismissed where they fail to allege the specific actions that White Line or Darien took that could conceivably render either entity liable.

## IV.     Plaintiffs' CFAA claims fail against White Line (Counts VI and X).

The parties seem to agree that Plaintiffs are alleging a civil action pursuant to 18 U.S.C. §1030(c)(4)(A)(i)(I), and that Plaintiffs are therefore required to allege "damage" or "loss" of at least $5,000. Plaintiffs have failed to allege such "damage" or "loss."

4

Plaintiffs argue that the statutory definition of "loss" extends to lost revenue resulting from the information Defendants allegedly misappropriated. Doc. # 72, p. 10. In support of this contention, Plaintiffs rely on *GPMM, Inc. v. Tharp*, 2019 WL 7161229 (D. Neb. Oct. 3, 2019). However, although the Plaintiff in *GPMM, Inc.* did allege damages in the form of lost revenues and profits, the court there declined to decide whether such categories constitute a "loss" covered by the CFAA. *Id.* at *4 ("the Court does not conclude whether all categories of damages listed by Plaintiff pursuant to its claims under the CFAA might be compensable under a properly pled civil claim under the CFAA").

Conversely, the overwhelming majority of courts find that the definition of "loss" does not encompass lost revenue unrelated to the interruption of service, which is the type Plaintiffs allege here. *See Nexans Wires S.A. v. Sark–USA, Inc.*, 166 F. App'x 559, 562 (2d Cir.2006) ("**the plain language of the statute treats lost revenue as a different concept from incurred costs**, and permits recovery of the former only where connected to an interruption in service.") (emphasis added); *Dewitt Ins., Inc. v. Horton*, 2014 WL 2208073, at *3 (E.D. Mo. May 28, 2014) (holding damage associated with the misappropriation of confidential information is not a "loss" under the CFAA); *Harley Auto. Grp., Inc. v. AP Supply, Inc.*, 2013 WL 6801221, at *6 (D.Minn. Dec. 23, 2013) ("The weight of relevant authority restricts the CFAA 'loss' requirement to actual computer impairment."). The CFAA's purpose is to punish individuals and entities who destroy data, not those who copy or transfer information. *Dewitt Ins., Inc.*, 2014 WL 2208073, at *3.

Plaintiffs fail to plead the actual cost of the investigation, if any, under the CFAA. In fact, Plaintiffs fail to plead a dollar amount associated with **any** of their alleged damages – apart from the not-covered misappropriated information. Doc. # 42, ¶247. Because Plaintiffs fail to plead the requisite covered "loss" of at least $5,000, their misappropriation claims fail.

Plaintiffs' CFAA claim fails for additional reasons. Plaintiffs plead no facts showing White Line or Darien ever accessed any of their computers. As such, Plaintiffs argue that White Line are

5

vicariously liable under the CFAA for the actions of certain of the other Defendants because they "directed" these individuals to access Plaintiffs' computer. Doc. # 72, p. 13. For support, Plaintiffs rely on *Charles Schwab & Co. v. Carter*, 2005 WL 2369815 (N.D. Ill. Sept.27, 2005). But the Plaintiffs in *Charles Schwab & Co.* pleaded facts showing that the defendant-employer affirmatively urged the defendant-employee to access the plaintiff's computer system. *Id.* at *7. Where, as here, Plaintiffs plead no facts showing what, if anything, White Line or Darien did to "direct" the other Defendants alleged computer access, vicarious liability does not attach. *See Schlumberger Tech. Corp. v. McReynolds*, 2016 WL 4597627, at *5 (W.D. La. Sept. 1, 2016) (dismissing CFAA claim where the complaint provided "no facts to explain how [defendant-employer] directed McReynolds to extract proprietary information from [plaintiff]"); *see also Role Models Am., Inc. v. Jones*, 305 F.Supp.2d 564, 568 (D.Md.2004) (rejecting a Computer Fraud Act claim where the plaintiff had not alleged that the employer itself accessed the plaintiff's computers); *Nat'l City Bank, N.A. v. Republic Mortg. Home Loans, LLC*, 2010 WL 959925, at *5 (W.D. Wash. Mar. 12, 2010) (granting motion to dismiss CFAA claim where there was "no allegation that [the supervisor] engaged in any culpable behavior or caused her subordinates to violate the CFAA"); *Butera & Andrews v. Int'l Bus. Machines Corp.*, 456 F. Supp. 2d 104, 112 (D.D.C. 2006) (finding no vicarious liability for defendant-employer where plaintiff alleged no facts showing that defendant-employer affirmatively urged its employees to access plaintiff's computer unlawfully).

Finally, even as regards the identified individual Defendants, Plaintiffs allege no facts showing which individual was or was not authorized to what access, including who may have had some authorization to access some information. As explained in the opening briefing, these missing facts are important because: (1) sections (a)(5)(A) and (a)(5)(B) of the CFAA do not apply to those who merely exceeded "authorized access"; and (2) the pleading does not state whether the individuals had no right to access the computer as they did, or simply no right to access the computer for the purposes they did. If certain Defendants had authorized access, but no authorization to use the information as

6

they did, there is no violation. *See U.S. v. Valle*, 807 F.3d 508, 523-528 (2d Cir. 2015) (authorized access put to unauthorized use is not a violation).

For all these reasons, Plaintiffs' CFAA claims fail to state a basis for relief against White Line or Darien, and should be dismissed.

### V. **Plaintiffs' Computer Tampering claims fail against White Line (Count VII).**

In Plaintiff's Response, they argue that their Computer Tampering claims are not preempted because "[t]he information which is alleged to be at issue need not be 'trade secret.'" Doc. # 72, p. 14. But, Plaintiffs' own Computer Tampering allegations **are** based upon the misappropriation of trade secrets. *See* Doc. # 42, ¶¶ 256-257 ("[t]he trade secret, confidential, and proprietary information of Pepper Companies was maintained on computers…and said computers were password protected…[Defendants] intentionally examined confidential, trade secrets, and/or proprietary information"). Because Plaintiffs' Computer Tampering claim is based upon the same set of facts as their misappropriation of trade secrets claims, the Computer Tampering claim is preempted by MUTSA. *See* Mo. Rev. Stat. §417.463 (preempting all torts and other laws providing civil remedies for misappropriation of a trade secret); *Reliant Care Management, Co., Inc. v. Health Systems, Inc.*, 2011 WL 4369371 (E.D. Mo. Sept. 19, 2011) (dismissing tort claims based on "facts related to the misappropriation of trade secrets claim" as preempted); *Secure Energy, Inc. v. Coal Synthetics, LLC*, 2010 WL 1691454, at *2 (E.D. Mo. April 27, 2010) ("claims that are based upon the same set of operative facts as a MUTSA claim will be preempted.").

Additionally, Plaintiffs' Response concedes that they failed to plead facts showing that White Line or Darien knowingly engaged in prohibited conduct. *See* Doc. # 72, pp. 14-15. In Plaintiffs' Response, they again attempt to add allegations to correct their deficient pleading. *Id.* Specifically, Plaintiffs now ask the Court for leave to add allegations that "Defendants" received information that "Defendants [knew] or believed was obtained as a result of" an action prohibited by the statute. *Id.* at

7

p. 15.

Plaintiffs' proposed amended allegations are still insufficient. Plaintiffs again lump all Defendants together, alleging "Defendants" received information that "Defendants" knew was obtained "as result of an action described hereinabove." *Id.* These allegations fail to meet Rule 8 standards because Plaintiffs fail to identify what White Line or Darien knew and how they came to know it. Plaintiffs have not alleged any facts to show White Line engaged in prohibited conduct with the knowledge or intent the statute requires. *See* Mo. Rev. Stat. §569.095(6) (prohibiting the receiving, retaining, using or disclosing of data **he knows** was obtained in violation of §569.095).

In regards to the individuals who allegedly engaged in the prohibited data disclosure, Plaintiffs merely allege each individual performed "one or more" actions. As discussed in the opening briefing, §569.095(5) only prohibits a person from accessing a computer and "intentionally examin[ing] information about another person." But, Plaintiffs allege nothing about "intentionally examin[ing] information about another person." Plaintiffs do not address this glaring deficiency in their Response, but instead attempt to hide behind the notice pleading standards of the Federal Rules of Civil Procedure. *See* Doc. # 72, p. 15.

In sum, Plaintiffs' Computer Tampering Act claims fail because: (1) they are preempted by the MUTSA; (2) they contain no facts showing that White Line had the requisite knowledge or intent; and (3) they do not allege any Defendant intentionally examined information about another person.

**VI.   Plaintiffs' trade secrets claims fail against White Line (Counts VIII, IX and XI).**

Plaintiffs have failed to describe the subject matter of their purported trade secrets with the requisite specificity; as such, their trade secrets claims should be dismissed. Despite pleading only general categories of information, Plaintiffs argue they have met their burden because they are not required to plead every detail of the trade secret. However, Plaintiffs "must do more than simply list general categories of information." *Elsevier Inc. v. Doctor Evidence, LLC*, 2018 WL 557906, at *6

8

(S.D.N.Y. Jan. 23, 2018); *see also Vendavo, Inc. v. Price f(x) AG*, 2018 WL 1456697, at *4 (N.D. Cal. Mar. 23, 2018) (granting motion to dismiss where plaintiff "set out its purported trade secrets in broad, categorical terms").

Plaintiffs allege their "trade secrets" consist of "a selective accumulation of information based on past purchasing, pricing, and selling experience, and cultivation of customers, employees, and drivers," and certain "internal information" for those drivers. *See* Doc. # 42, ¶ 262.

Courts have previously found similar allegations insufficient to satisfy the first element of a misappropriation of trade secrets claim on a motion to dismiss. In *Vendavo, Inc.*, Plaintiffs alleged misappropriation of trade secrets that included "its source code, customer lists and customer related information, pricing information, vendor lists, and related information, marketing plans and strategic business development initiatives." 2018 WL 1456697, at *3. The court dismissed the trade secret claim because plaintiff failed to "describe the subject matter of the trade secret with sufficient particularity to separate it from matters of general knowledge in the trade or of special persons who are skilled in the trade." *Id.* at *4; *see also Akzo Nobel Coatings Inc. v. Rogers*, 2011 WL 5316772, at *24 (N.C. Super. Ct. Nov. 3, 2011) (dismissing a trade secrets claim as overly broad where the complaint defined the trade secrets as "proprietary formulas, methodologies, customer and pricing data and other confidential information"); *Washburn v. Yadkin Valley Bank and Tr. Co.*, 190 N.C. App. 315, 327 (2008) (dismissing a claim alleging trade secrets consisted of "business methods; clients, their specific requirements and needs; and other confidential information"); *Elsevier Inc.*, 2018 WL 557906, at *6 ("[a]lleging the existence of general categories of confidential information, without providing any details to generally define the trade secrets at issue…does not give rise to a plausible allegation of a trade secret's existence"). These categorical, nonspecific allegations are nearly identical in kind to those Plaintiffs' employ, here.

Moreover, Plaintiffs' Response ignores the point that the First Amended Complaint fails to

9

allege any facts showing White Line acquired or used the alleged trade secrets with knowledge or reason to know they had been acquired by improper means or otherwise protected. Without these facts, Plaintiffs trade secrets claims fail. *See* Mo. Rev. Stat. §417.453 ("Misappropriation" in violation of the MUTSA occurs when a person's trade secret is acquired by another "who knows or has reason to know" the trade secret was acquired by "improper means").[1]

Because Plaintiffs fail to sufficiently identify the alleged trade secrets, or allege facts showing White Line acted with the requisite knowledge, their trade secrets claims fail.

### VII.  Plaintiffs' Truth-in-Leasing claims fail against White Line (Count XII).

Plaintiffs do not fall within the "zone of interests" to be protected by the Truth-in-Leasing regulations. *See Thole v. U.S. Bank, Nat. Ass'n*, 873 F.3d 617, 628 (8th Cir. 2017). Congress authorized the Truth-in-Leasing regulations to protect independent truckers from motor carriers' abusive leasing practices. *See Fox v. Transam Leasing, Inc.*, 839 F.3d 1209, 1215 (10th Cir. 2016) ("Congress's substantive purpose in authorizing the Truth-in-Leasing regulations was to protect independent truckers, to remedy disparities in bargaining positions between independent owner operators and motor carriers"). Where Plaintiffs claims do not fall within the protections Congress intended to provide, they cannot state a claim. *See Rosebud Sioux Tribe v. McDivitt*, 286 F.3d 1031, 1036 (8th Cir. 2002) ("Prudential limits require a plaintiff to show the grievance arguably falls within the zone of interests protected or regulated by the statutory provision invoked in the suit.").

Plaintiffs do not offer any authority to the contrary. Instead, Plaintiffs argue that a private right of action can exist under the Motor Carrier Act, an issue not in dispute. Plaintiffs attempt to use *Owner-Operator Indep. Drivers Ass'n, Inc. v. New Prime, Inc.*, to argue that the Motor Carrier Act provides a cause of action to one motor carrier, against another motor carrier. 192 F.3d 778 (8th Cir. 1999). *New Prime,*

---

[1] Plaintiffs' DTSA claims mirror the MUTSA claims, in relevant part. *See Phillis Schlafly Revocable Tr. v. Cori*, 2016 WL 6611133, *3 (E.D. Mo.) (elements of the two statutes are the same).

10

*Inc.* does not support that proposition. In *New Prime, Inc.*, a group of owner-operators sued a registered motor carrier, challenging certain contract terms contained in their leasing agreement. *Id.* at 780. The issues presented to the court centered on whether the Federal Highway Administration has exclusive jurisdiction to enforce Truth-in-Leasing regulations. *Id.* at 783.

The group of owner-operators in *New Prime, Inc.* is the exact group of people Congress intended to protect in authorizing the Truth-in-Leasing regulations – Pepper, a registered motor carrier, is not. *See Fox*, 839 F.3d at 1215 ("Congress authorized the truth-in-leasing regulations after a series of hearings in the 1970s uncovered numerous problems and abuses suffered by the independent trucker."). In fact, Plaintiffs are unable to cite a single case where one motor carrier brought an action against another motor carrier, pursuant to the Truth-in-Leasing regulations.

Moreover, Plaintiffs Truth-in-Leasing claim fails because they do not allege any facts showing how White Line violated the regulation. Plaintiffs only proffer the legal conclusion that White Line and Darien used the equipment, via Pepper's former drivers, without a written lease. Doc. # 42, ¶302. This legal conclusion – with no accompanying factual allegations – is insufficient to show that White Line did anything in violation of the Truth-in-Leasing regulations. *See Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) (holding courts should ignore "legal conclusion[s] couched as…factual allegation[s]").

Plaintiffs' pleading deficiencies cannot be saved by their allegations that White Line and Darien were "part of a scheme" of "all Defendants." Doc. # 42, ¶303. Again, Plaintiffs lump all Defendants together without specifying how or when White Line participated in this alleged scheme to violate the Truth-in-Leasing provisions. *See Potter v. Lineback*, 2018 WL 2335762, *4 (E.D. Mo.) ("plaintiff is required to allege specific facts showing what each named defendant did to violate his rights").

For these reasons, Plaintiffs Truth-in-Leasing claims should be dismissed.

**VIII.   Plaintiffs' "civil conspiracy" claim fails against White Line (Count XV).**

A civil conspiracy claim is not a stand-alone cause of action. *See 8000 Maryland, LLC v.*

11

*Huntleigh Fin. Servs. Inc.*, 292 S.W.3d 439, 451 (Mo. App. 2009) ("Civil conspiracy is not a cause of action in and of itself; rather, it acts to hold the conspirators jointly and severally liable for the underlying act."). Plaintiffs do not dispute that this is the rule in Missouri; but rather, they assert that the "entirety of the Amended Complaint…allege[s] underlying causes of action against Defendants." Doc. # 72, p. 21.

Plaintiffs' civil conspiracy claim is insufficient where it generally alleges the "conspiracy" caused all of the things about which the Complaint complains. *See Seegers v. Marx & Haas Clothing Co.*, 66 S.W.2d 526, 528 (Mo. 1933) (dismissing civil conspiracy claim where the petition contained conclusory allegations "that the conspiracy caused all of the things about which the petition complains"). More specifically, Plaintiffs claim against White Line must fail where they allege no facts showing what, if anything, either entity did in furtherance of a conspiracy to commit an unspecified underlying tort(s). *See id.* ("The allegation that defendants carried out the conspiracy, and that the conspiracy caused the things about which complaint is made, do not charge defendants with the commission of any unlawful act, but are mere conclusions of the pleader, and for that reason the petition does not state a cause of action.").

Further, the elements of civil conspiracy require Plaintiffs to allege that White Line had an "unlawful objective" after a "meeting of the minds." *See Higgins v. Ferrari*, 474 S.W.3d 630, 642 (Mo. App. 2015) (identifying requisite elements of a civil conspiracy claim). Plaintiffs allege no such facts in the FAC.

In sum, Plaintiffs fail to allege: (1) the underlying tort; (2) facts showing that, how, or when White Line engaged in a conspiracy; (3) that White Line had an "unlawful objective"; or (4) that White Line had a "meeting of the minds" with anyone. The fact that White Line were successors to Plaintiffs' failed business relationship does not render them liable for civil conspiracy.

12

**IX.     Plaintiffs' punitive damages claims fail against White Line for all counts.**

Plaintiffs' allegations in support of their punitive damages claims are similarly generalized, undifferentiated and insufficient. Doc. # 42, ¶¶188, 198, 219, 270, 339. Plaintiffs' simply recite the standard for punitive damages, alleging collective Defendants "acted with evil motive and intentional and reckless indifference to the rights and interests of Pepper Companies." *Id.* Without setting forth any factual allegations in support, Plaintiffs cannot establish a claim for punitive damages. *See George Weis Co. v. Dwyer*, 867 S.W.2d 520, 523 (Mo. Ct. App. 1993) (affirming dismissal of punitive damages claim where plaintiff merely alleged "conclusion[s] that the defendants acted outrageously and with reckless indifference to the rights of others," with "no factual allegations to support the claim of outrageous conduct or reckless indifference"). As such, Plaintiffs' punitive damages claims for all counts against White Line should be dismissed.

## Conclusion

Plaintiffs have failed to plead any plausible claim against White Line. Plaintiffs' First Amended Complaint consists of conclusory and undifferentiated allegations that fail to show that White Line engaged in any actionable conduct under any theory of liability. Plaintiffs' pleading method does not satisfy Rule 8, and fails Rule 12(b)(6)'s test for stating a claim against a defendant. While Plaintiffs may be unhappy that White Line has succeeded them as Lanter's business partners, that does not grant them a cause of action against either entity.

Respectfully submitted,

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.

By: */s/ R. Lance Witcher*
R. Lance Witcher, MO #45940
David L. Schenberg, MO #44527
Samuel W. Newman, MO #69443
7700 Bonhomme Avenue, Suite 650
St. Louis, MO 63105
Telephone: 314-802-3935
Facsimile: 314-802-3936
lance.witcher@ogletree.com
david.schenberg@ogletree.com
samuel.newman@ogletree.com

*Attorneys for White Line Systems, LLC and Darien Brokerage, LLC*

## CERTIFICATE OF SERVICE

I hereby certify that on February 8, 2021, a true and accurate copy of the foregoing was electronically filed with the Clerk of Court by using the Court's CM/ECF system, to be served via operation of the Court's electronic filing system upon all counsel of record.

*/s/ R. Lance Witcher*

45934268.1